IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 26 CV 5182 & 1:20 CR 577-2 |
| Tremaine Brent. | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

On September 25, 2024, Tremaine Brent pled guilty to a charge of conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. I sentenced him to a below-guidelines term of 120 months in custody, which all agreed was the mandatory minimum based on the quantity of drugs with which Mr. Brent was charged in the superseding indictment. Indeed, the count to which Mr. Brent pled guilty charged offenses involving specific drug quantities, including 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, triggering the 10-year mandatory minimum of 21 U.S.C. § 841(b)(1)(A)(vi). At sentencing, the government stated that its charging decision reflected the government's view of Mr. Brent's role in the conspiracy for "two months," i.e., between

April 23, 2020, and his withdrawal on June 29, 2020. *See* Sentencing Transcript, 20 CR 577-1, ECF 1031 at 13.

On May 1, 2026, Mr. Brent filed a collateral attack on his conviction under 28 U.S.C. § 2255, arguing that his guilty plea was not knowing and voluntary due to the constitutionally ineffective assistance of his counsel. Specifically, he argues that before entering his guilty plea, he told his attorney that he did not want to plead guilty if it meant that he would be subject to a mandatory 10-year minimum and that he would rather "take his chances" at trial than agree to a plea that resulted in a mandatory 10-year sentence. He insists that his attorney assured him that the Plea Declaration accompanying his guilty plea preserved his ability to challenge the government's position on the date he joined the conspiracy, the drug quantity attributable to him, and other matters. His attorney told him, Mr. Brent adds, that she would address these issues at his plea hearing or at sentencing, but she failed to do so. Most critically, Mr. Brent contends, his attorney told him that by pleading guilty pursuant to the Plea Declaration, he was not agreeing that he was subject to the statutory mandatory minimum sentence; yet that was the inexorable result of his guilty plea given the drug amount with which the superseding indictment charged him.

I have reviewed Mr. Brent's Plea Declaration; the transcript of his change of plea hearing; the written exhibits attached to

his motion containing written communications between Mr. Brent and his counsel; and the September 23, 2026, submission of his plea counsel, which confirmed, to the best of her ability, the authenticity and accuracy of those exhibits (which the government does not challenge). Based on these materials, I am persuaded that as a result of his counsel's mistaken statements concerning the sentencing implications of his guilty plea, Mr. Brent's plea was not knowing and voluntary. Accordingly, I grant his motion to vacate.

I.

"By pleading guilty to a criminal charge, a defendant waives several fundamental constitutional guarantees. Because a defendant sacrifices these critical rights, both due process and Rule 11 require that a defendant's guilty plea be made voluntarily and knowingly." *United States v. Fernandez*, 205 F.3d 1020, 1024 (7th Cir. 2000). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

As the Seventh Circuit has explained, "a plea, even one that complies with Rule 11, cannot be 'knowing and voluntary' if it

resulted from ineffective assistance of counsel." *Hurlow v. United States*, 726 F.3d 958, 967–68 (7th Cir. 2013) (citations omitted). While courts consider the totality of the circumstances in assessing whether a plea is knowing and voluntary, a defendant whose counsel fails to inform him of "the probable applicability of statutorily mandated minimums" may not "understand his situation fully." *Fernandez*, 205 F.3d at 1028 (quoting *United States v. Padilla*, 23 F.3d 1220, 1222 (7th Cir. 1994)). The relevant inquiry must center upon what the defendant actually knows when he pleads guilty." *Id.*

A defendant seeking to vacate a guilty plea based on his counsel's ineffective assistance must satisfy the well-known standard of *Strickland v. Washington*, 466 U.S. 668 (1984): He must show that his attorney's representation "fell below an objective standard of reasonableness" and that he was prejudiced as a result. *Lee v. United States*, 582 U.S. 357, 363 (2017) (quoting *Strickland*, 466 U.S. at 688, 692). In this context, the prejudice prong requires the defendant to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 364-65 (quoting *Hill* 474 U.S. at 59). Importantly, the defendant need not show "that he would have been better off going to trial," but only that his counsel's mistakes affected his "understanding of the consequences of pleading guilty." *Lee*, 582 U.S. at 365.

II.

Mr. Brent contends that he made clear to his attorney from the beginning that he was unwilling to plead guilty if it meant that he would be subject to a 10-year mandatory minimum sentence. In the earliest email he attaches to his motion, dated July 10, 2024, his attorney transmits a draft plea agreement the government proposed to resolve his case and explains how it compares to the plea agreements the government tendered to his co-defendants. *See* ECF 3 at 33.[1] Counsel observes that as of the date of her email, nearly all of Mr. Brent's co-defendants had pled guilty, and that I had sentenced several of them to prison terms below their guidelines range. His attorney goes on to explain:

> The problem in your case is that the Govt is still charging you, Bryant and Grant with the conspiracy amount. This means that even though the Court may decide to extend lenience to you also, she cannot by statute go below 10 years. ... No one can predict whether the Court would give you ten years. It could be higher. ... But she cannot by law go below 10 years.

ECF 3 at 33.

From subsequent emails, it is clear that Mr. Brent was unwilling to accept the terms of the government's proposed plea agreement. *See* counsel's email of 09/17/2024, ECF 3 at 34 (referencing plea declaration she was finalizing "based on what we discussed"); counsel's email of 09/20/2024, ECF 3 at 35 ("[t]he

[1] Page numbers refer to the pagination automatically generated in the header of documents filed on CM/ECF.

attached should reflect our discussions regarding your concerns in resolving your case.”). The record shows that Mr. Brent responded with questions about the draft plea declaration, including with respect to its acknowledgement of the government's position on drug quantities, which he found "kind of confusing." ECF 3 at 45. His attorney replied:

> [Y]ou are NOT agreeing to the drug amount. The amount initially stated is what is in the indictment. The plea declaration states in several sections that you are only agreeing to 'multiple' grams and not a specific number. I don't know how many times I can express that to you. Keep in mind that you are never agreeing to anticipated drug amount, an anticipated offense category or an anticipated criminal history. This is all left to the Judge at sentencing.

ECF 3 at 36 (original emphasis).

Given the specific drug quantities embedded in the government's charge, an experienced prosecutor, criminal defense attorney, or judge may interpret counsel's comments about "anticipated" drug quantities and other factors as bearing on Mr. Brent's Sentencing Guidelines range, rather than on his statutory penalty range. Indeed, a jurist steeped in the nuances of sentencing law and the interplay between the Sentencing Guidelines and the statutory penalties of § 841(b) may perceive that once Mr. Brent pled guilty to the government's charge and admitted its factual basis, any factual disputes the Plea Declaration reserved for sentencing could influence only the extent to which his sentence might *exceed* the 10-year statutory minimum. But that is

not the message that emerges from counsel's emails. To the contrary, in what appears to be her final email to him prior to his plea hearing, she suggested that the Plea Declaration preserved his ability to challenge the application of the statutory 10-year minimum. She wrote:

> [A]s I have said many times, you are not agreeing to the start date of your part in the conspiracy and you are advising the Court that you ended your participation long before the conspiracy officially ended... You are not agreeing to the amount of drugs for which you are liable/accountable. ... ***Nor are you agreeing that you are subject to the mandatory minimum 10 year sentence. ... In challenging the amount of drugs and the length of your participation, we are trying to get your liability shaved as close as we can to try to convince the Court at sentencing not to find you liable for the 10 year minimum. This is going to be up to the Court since there is no agreement between the parties.***

Email of 09/21/2026, ECF 3 at 37 (emphasis added).

It is true that months earlier, Mr. Brent's attorney cautioned him that if he accepted the government's proposed plea agreement, I would be required "by law" to sentence him to 10 years or more. ECF 3 at 33. But Mr. Brent did not accept the government's plea agreement; instead, he signed the Plea Declaration, which his attorney assured him addressed his "concerns" with the government's proposed plea. In particular, she told him that the Plea Declaration preserved his ability to raise sentencing arguments (and indeed, she told him that she would raise arguments) that might "convince" me "not to find [him] liable for the 10 year minimum." ECF 3 at 37.

That advice was error. The Plea Declaration acknowledged that Mr. Brent was guilty of "conspiracy to possess with intent to distribute and distribute...400 grams or more of a mixture and substance containing a detectable amount of fentanyl[.]" The inevitable result of his guilty plea to that charge is that his sentence could be no less than 10 years, regardless of any factual results he preserved for sentencing.

Mr. Brent's later emails to his counsel reveal that he did not understand this when he pled guilty. For example, on December 1, 2024, Mr. Brent wrote:

> I was reading over my plea ... it seems like I plead and agreed to everything I said I did not want to agree to. ... I never wanted to be in a situation where I'm stuck with a mandatory 10 that I agreed to. I would have fought for that, because in 10 years more family will pass away, I won't have a family to come home to and I will have nothing!

ECF 3 at 41. It is also clear that counsel's erroneous assurances are what misled Mr. Brent into believing that the Plea Declaration preserved his ability to dispute the application of the statutory minimum sentence. In another pre-sentencing email, Mr. Brent expressed his surprise and consternation after his attorney described him as "one of three conspirators at the statutory 10 year minimum." He wrote:

> The reason I'm still confused is because around the time when we were discussing the plea declaration, I mentioned to you that I was not comfortable with pleading guilty to a mandatory minimum of 10 year sentence. I also mentioned that I would have taken my chances and

> fought the case at trial because in 10 years I fear I will have no family and feared that my family would pass away. ... You responded by letting me know that it wasn't a plea agreement. You stated it was just a declaration in which we would basically be contesting the start date and my involvement [i]n order to try to get the Court to determine I wasn't a manager and possibly have my drug weight lowered. .. Now comes the sentencing date and basically you're telling me we're unable to contest those things ... If any event that I do receive 10 years, I definitely want to appeal it because if I had known when I agreed to plead guilty that those 3 things would not have helped the 10 year minimum be removed I would have taken the case to trial.

*Id.*

This evidence aligns with the facts of *Lee*, where the Court vacated the defendant's guilty plea on the ground that his counsel's ineffective assistance impaired his understanding of the consequences of pleading guilty. The defendant – a lawful permanent resident of the United States – pled guilty to a charge that qualified as an "aggravated felony" under the Immigration and Nationality Act, thus subjecting him to mandatory deportation. *Lee*, 582 U.S. at 362. The undisputed evidence on Lee's § 2255 motion established that during plea negotiations, Lee told his attorney that "deportation was the determinative issue in [his] decision whether to accept the plea," and his attorney erroneously assured him that "he would not be deported as a result of pleading guilty." *Id.* Lee accepted the government's plea agreement in reliance on that advice, triggering the INA's mandatory deportation provision. *Id.*

The district court acknowledged that Lee's attorney performed deficiently but held that Lee had not shown prejudice because the evidence against him was overwhelming, so he would have "almost certainly" have been found guilty after a trial. *Id.* The Supreme Court rejected this reasoning. Observing that the focus of the inquiry is on "what an individual defendant would have done," the Court held that since Lee, properly advised, might rationally have chosen to go to trial, his attorney's mistaken advice satisfied *Strickland*'s prejudice prong. *See id.* at 371 ("But for his attorney's incompetence, Lee would have known that accepting the plea agreement would certainly lead to deportation. Going to trial? *Almost* certainly. If deportation were the 'determinative issue' for an individual in plea discussions...that 'almost' could make all the difference.") (original emphasis).

The government's response to Mr. Brent's motion fails even to mention *Lee*, much less to consider its application to the facts here. The government pays lip service to the correct standard, *see* Resp., ECF 9 at 9, but the substance of its argument is that Mr. Brent's motion should be denied because: 1) his statements during the Rule 11 plea colloquy establish that his guilty plea was knowing and voluntary; and 2) his counsel obtained concessions from the government and raised arguments at sentencing that resulted in the most favorable sentence that the law allowed. The

first argument is not persuasive in light of the totality of the circumstances. The second simply ignores the relevant standard.

It is true that during the plea colloquy, I asked Mr. Brent if he understood that the charged offense "carries a maximum statutory sentence of life imprisonment, [and] a statutory mandatory minimum sentence of 10 years imprisonment," and he said yes. Tr. of 09/25/2024 Hr'g., 20 CR 577-2, ECF 945 at 89. But his attorney's later statements at the hearing, when understood in the context of the erroneous advice she gave him just days earlier, could easily have led him to believe, mistakenly, that if he successfully challenged his start date in the conspiracy, he could lower the drug quantity for which he would be deemed responsible to an amount that would not trigger the statutory minimum.

The government closed its summary of the evidence it expected to present at trial by observing:

> [T]here is a small disagreement...as to when Mr. Brent withdrew from the conspiracy...but both sides agree that the beginning date was April 23, 2020. ... Notwithstanding that factual disagreement, the parties both agree that Mr. Brent should be held accountable for, at the very least, the charged conduct, which would require a 10-year statutory mandatory minimum sentence.

ECF 945 at 10-11. I asked Brent whether he had heard the government's statement and whether it was true, and he replied "yes ma'am" to both questions. *Id.* at 11. Immediately thereafter, Mr. Brent's counsel asked for a moment, then stated: "The final draft of the plea declaration indicates that defendant is alleging

that he began his involvement in the conspiracy subsequent to April 23. So we don't have a date where Mr. Brent is indicating the date he started. I think there may have been some confusion with regard to earlier drafts." *Id.*

Given his attorney's earlier assurances, Mr. Brent undoubtedly believed that by clarifying his non-agreement with the government's position on the start date of his involvement, he preserved an objection to facts that could affect his exposure to the mandatory minimum. As explained above, however, those objections - even assuming that his attorney had raised them successfully at sentencing - would not have empowered me to sentence him below the mandatory minimum. Because the undisputed evidence persuades me that Mr. Brent did not understand this - to the contrary, it shows that Mr. Brent would not have pled guilty had he known that doing so would inevitably trigger a 10-year mandatory minimum - Mr. Brent "has demonstrated a 'reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee*, 582 U.S. 371 (quoting *Hill*, 474 U.S. at 59)) (alteration in *Lee*). That is all he must show to prevail on his motion.

III.

For the foregoing reasons, Mr. Brent's motion is granted. The government shall secure Mr. Brent's release from custody forthwith on the same conditions of bond that were in effect prior to his

sentencing. The government shall further indicate, on or before November 30, 2026, whether it intends to try Mr. Brent or to proceed in some other fashion.

**ENTER ORDER:**

______________________________
**Elaine E. Bucklo**
United States District Judge

Dated: October 1, 2026